In the Matter of SEALTEST FOODS DIVISION OF NATIONAL DAIRY PRODUCTS CORPORATION, Appellant, v. J. REVITT OLDHAM, as Health Officer of the City of Lockport, Respondent. CASTLE'S CITIZENS DAIRY COMPANY, Intervenor-Respondent.

Fourth Department, July 1, 1963.

*Stephen H. Kelly* for appellant.

*A. Thorne Hills* for respondent.

*Fogel, Andrews & Pusateri* (*Anthony L. Pusateri* of counsel), for intervenor-respondent.

HALPERN, J.  This case presents an important question as to the meaning of section 258-j of the Agriculture and Markets Law as amended by chapter 982 of the Laws of 1962, effective April 30, 1962, but the case comes to us in a rather unsatisfactory form because the proceeding had been instituted, and the events which had given rise to it had taken place, prior to the adoption of the amendment.

The petitioner had been duly licensed for many years by the Commissioner of Agriculture and Markets pursuant to section 258 and the following sections of the Agriculture and Markets Law to sell and distribute milk in the City of Buffalo and in certain other parts of Erie County and in all of Niagara County and other areas.  It maintained its milk plant in the City of Buffalo and distributed milk therefrom throughout its license area.  It had not, however, sold or distributed milk in the City of Lockport, which is in Niagara County.  Under section 3.10 of the Sanitary Code adopted pursuant to section 225 of the Public Health Law (10 NYCRR 3.10), the petitioner was required to obtain a health permit from the local Health Officer before engaging in milk distribution in that city.  On September 15, 1961, the petitioner applied to the Health Officer for such a permit but the Health Officer refused to issue the permit upon the ground that there was no need for '' additional dairy routes in the city '' or for an '' additional supply '' of milk.

The Health Officer claimed to be authorized to take this action by section 258-j of the Agriculture and Markets Law as it then read.  The only relevant part of section 258-j is the third sentence which, prior to its amendment in 1962, read as follows: '' No health officer of any county, city or village of this state shall hereafter approve any premises on which milk is produced or any plant in which milk is handled or authorize the shipment of milk from such premises or plant for sale or use within this state without first satisfying the commissioner that such proposed added milk supply is reasonably needed for such municipality, will not deprive another municipality of a supply, present or future, more conveniently related to it, and that such supply can be inspected and kept under inspection without undue expense.''

Even under the statute in this form, the Health Officer was mistaken in refusing the permit upon the ground which he gave, because he had no authority to make a determination of the issue of whether there was a need for an added supply in the municipality. He was authorized only to gather the relevant information and to submit it to the Commissioner of the Department of Agriculture and Markets; the Commissioner was to determine the issue.

The petitioner thereupon brought the present proceeding under article 78 of the Civil Practice Act seeking an order directing that the Health Officer issue a health permit to it or, in the alternative, directing that the Health Officer transmit the data with respect to the need for an added supply to the Commissioner for his determination in accordance with the statute. The petition was verified on March 2, 1962.

The Castle's Citizens Dairy Company, a milk dealer then operating in Lockport, obtained leave to intervene in the proceeding and the Health Officer and the intervenor then moved to dismiss the petition for insufficiency in law. While the motion was pending in Special Term, the quoted portion of section 258-j was repealed and there was substituted therefor the following: "No milk dealer shall hereafter accept for sale or distribution in a marketing area or at a plant supplying such marketing area when such marketing area is regulated by a state milk marketing order, milk from any premises on which milk is produced or from any plant in which milk is handled unless such premises constitute a milk production area dairy farm as defined by section two hundred fifty-eight-l or unless the milk from such plant has been received for sale or distribution in such marketing area or at a plant subject to such order within the past two full calendar years without first satisfying the commissioner that such proposed added milk supply is reasonably needed for such marketing area, and that the acceptance of such added milk supply will not deprive any municipality or any other marketing area of a supply, present or future, more conveniently related to it."

The parties agreed that the court should proceed to decide the pending motion upon the basis of the new statute and the court undertook to do so. The difficulty with this procedure was that no demand had been made upon the Health Officer for a permit in the light of the new statute and he had not been given an opportunity to comply with the demand, without litigation. We believe, however, that this procedural defect may be cured in the manner outlined at the conclusion of this opinion.

Turning to the substantive question in the case, namely, the interpretation of the 1962 amendment, we are of the opinion

that the Special Term gave much too narrow a construction to the amendment. The Special Term construed the amendment as shifting the responsibility for the gathering of the data as to the need for an added supply from the Health Officer to the applicant dealer, but it held that the statute still required a demonstration to the satisfaction of the Commissioner that there was a need for an added milk supply in the particular municipality. The Special Term also construed section 258-j (both in its old and new forms) as making such a determination by the Commissioner a condition precedent to the issuance of a health permit. The Special Term accordingly dismissed the petition.

This, in our opinion, failed to take account of the drastic change which the 1962 amendment had brought about in the nature and purpose of section 258-j.

As is apparent upon a reading of the text, the amendment wiped out all provision for inquiry by the Health Officer and determination by the Commissioner as to whether an added milk supply was needed in the particular county, city, or village within the jurisdiction of the Health Officer. Instead, the amended statute provided for a determination by the Commissioner (in which Health Officers were to play no part) as to whether there was a need for an added milk supply in the "marketing area". The amended statute by its terms was applicable only to marketing areas which were "regulated by a state milk marketing order". This in effect meant the Niagara Frontier marketing area and the Rochester marketing area, the only two areas in the State covered by State milk marketing orders. (The Metropolitan New York City marketing area is governed by complementary milk marketing orders adopted by the Federal and State authorities and is therefore not subject to the new statute.) Lockport and the rest of Niagara County are, of course, within the Niagara Frontier marketing area (1 NYCRR 21.3).

No declaration of legislative policy accompanied the 1962 amendment, but the legislative history fully reveals the purpose of the Legislature in adopting the amendment. There had long been dissatisfaction with the theory under which milk distribution was regulated in New York State. In 1959, the Legislature passed a bill (Assembly Int. No. 2131, Pr. No. 2151), the so-called Main-McEwen Bill, which removed all restrictions upon the granting of licenses to milk dealers based upon the adequacy of the existing milk supply, and opened the way to full and free competition in milk distribution. The Governor vetoed the bill in a message in which he canvassed the arguments for restrictive licensing as it had theretofore prevailed, and the arguments for free competition in milk distribution and he came to the conclusion that a study should be made of the whole subject by an

independent committee (N. Y. State Legis. Annual, 1959, pp. 473–475). Accordingly, the Governor appointed a Special Committee on Milk Licensing headed by Dr. Everett Case, the President of Colgate University, to examine into the entire question and to report to the Governor and the Commissioner of Agriculture and Markets.

On February 18, 1960, the Case Committee made its report. It recommended that the existing restrictive licensing practice, which was based upon the theory that a dealer's license was a protected franchise and which had tended to create monopolies or oligopolies in milk distribution in various parts of the State, should be abandoned. It proposed that the provision of section 258-c of the Agriculture and Markets Law which authorized the Commissioner to deny a license upon the ground " that the issuance of the license will tend to a destructive competition in a market already adequately served " should be repealed. The committee stated the objective should be the establishment " of a free and competitive market subject only to such legislative safeguards and administrative regulation as experience had proven necessary to prevent its abuse " and that " all duly qualified persons [should have] the right of free entry to the market ". (Report of the Special Committee on Milk Licensing, p. 5, on file in the office of the Commissioner of Agriculture and Markets.) The evils growing out of the restrictions upon competition under the existing law were spelled out in the report. The report pointed out that " when restricted entry into the industry is coupled with territorial restrictions, existing dealers have a ' captive market ' which can sharply reduce the competitive pressure on dealers to sell at the lowest price consistent with the recovery of costs and a reasonable return on investment. In effect, restrictive licensing tends to protect existing dealers, regardless of the levels of efficiency they have achieved. Furthermore * * * there is no assurance that any economies which might result from restrictive licensing will be shared by the protected milk dealers with producers or consumers " (Report, pp. 24–25). Further, the committee noted: " Evidence of such conditions can be found in numerous localities throughout the state, where the absence of competitive bids for furnishing milk to the schools results in higher prices than those established by competitive bidding in nearby localities " (Report, p. 8).

The committee also recommended, among other changes in the statute, that the authority of the Commissioner to restrict licenses to particular cities or villages as provided in section 258 of the Agriculture and Markets Law should be limited to cases

in which the applicant requested such a restriction, and that territorial restrictions generally should be relaxed or modified so that milk dealers would be licensed to serve whole marketing areas, not limited to particular political subdivisions.

When the committee came to section 258-j (the section with which we are here especially concerned), it recognized that the protection against competition given to existing dealers under that section was wholly incompatible with the committee's general approach and it accordingly recommended that the third sentence of section 258-j should be repealed and a new provision of an entirely different character should be substituted. The committee drafted a bill revising section 258-j to implement its recommendation and appended it to its report (pp. 17–18). This bill was adopted by the Legislature substantially in the language recommended by the committee, so far as here relevant, and, upon approval of the Governor, it became chapter 982 of the Laws of 1962.

The amendment to section 258-j was thus part of a general pattern for the removal of barriers to competition in the milk distribution industry. The broad changes in the statutory provisions regulating licensing recommended by the committee have not yet been adopted but the enactment of the amendment to section 258-j may be regarded as the first step in the implementation by the Legislature of the committee's recommendations.

It is thus apparent that it was the considered purpose of the Legislature in amending section 258-j to remove the protection which licensed milk dealers in particular municipalities had theretofore enjoyed against the competition of other milk dealers licensed to serve in the general area embracing the municipality. The purpose of the new provision of section 258-j is so different from that of the old that it might have been better if the committee had recommended, and the Legislature had adopted, the procedure of repealing the third sentence of section 258-j in its entirety without inserting any substitute therefor, and placing the new provision elsewhere in a separate paragraph or section, so as to make it clear that it was in no sense a continuation of the old provision. The purpose of the old provision was to protect existing milk dealers in a particular municipality from increased competition if the existing dealers adequately served the municipality. This was obviously not the purpose of the amended section. The principal purpose of the new provision seems to be to preserve an orderly relationship between milk marketing order areas so that no area would be flooded by milk supplies from outside the area not approved by the Commissioner. As stated in the memorandum by the Director

of the Division of Milk Control, its purpose was "not to let outside milk supplies disorganize the market order areas resulting in chaotic marketing conditions". (See Memorandum attached to the brief submitted in the court below by the Commissioner of Agriculture and Markets as *amicus curiæ* in support of the petitioner's position, printed as part of the record on appeal, pp. 73–74.)

The new provision of section 258-j obviously has no bearing upon this case because the petitioner proposes to supply the milk for Lockport from its Buffalo plant which is within the same marketing area. Furthermore, the statute specifically provides that the requirement of an additional determination by the Commissioner as to the need for an added supply in the marketing area is not applicable to sources of milk supply which were already being used to serve the area and which had been so used to serve it for two years or more. The petitioner has served the Niagara Frontier marketing area from its Buffalo plant for more than two years and therefore under the express terms of the statute no additional determination by the Commissioner was required in this case. As a matter of fact the Commissioner in the *amicus curiæ* brief which he filed at Special Term raised no question as to the need for any additional determination on his part in order to enable the petitioner to sell and distribute milk in any part of its licensed territory.

Finally, even if an additional determination by the Commissioner were required in this case, the Health Officer of Lockport would have nothing to do with it; he has no standing to raise the question. Under the amended statute, he has no function to perform with respect to any determination by the Commissioner which may be required with respect to the need for an added supply in the milk marketing area. All questions of economic need have been taken out of the Health Officer's hands. He still has a function to perform under section 3.10 of the Sanitary Code, but that function is strictly limited to the consideration of matters of health. Under the old section 258-j, the obtaining of the required determination by the Commissioner was made a condition precedent to the obtaining of a health permit but under the new statute the obtaining of the new kind of determination by the Commissioner in those cases in which it is required has no connection whatsoever with the obtaining of a health permit. There is no reference to a health permit in the new section 258-j and there is no provision which makes the obtaining of a determination by the Commissioner a condition precedent to the obtaining of a health permit. The establishment of such a condition precedent would be incongruous

with the rest of the statute, since the new kind of determination provided for in the new statute relates to the additional needs of the whole marketing area, and not of any particular municipality therein. The Health Officer, on behalf of his municipality, would have no interest in such a determination.

The Special Term relied upon the provisions of section 3.10 of the Sanitary Code to the effect that a health permit should " be issued only to a person who holds a license " issued by the Commissioner. That provision raises no problem in this case since the petitioner was duly licensed to serve the whole of Niagara County, including the City of Lockport. In fact, after the present controversy had arisen, the Commissioner issued a certificate that the petitioner was " licensed to sell and distribute milk and cream throughout the entire County of Niagara (among others) including the city of Lockport ". The Special Term seems to have been of the opinion that the additional determination by the Commissioner under section 258-j was an additional " license " and that therefore one who did not have such an additional determination was not licensed to serve in the area within the meaning of section 3.10 of the Sanitary Code. In reaching this conclusion, the Special Term Justice may have been misled by the opening sentence of section 258-j to the effect that " The license required by this article shall be in addition to any other license required by this chapter or otherwise required by law ", but it will be noted that this sentence refers to a license required by this " article " and not to one required by this " section ". The article referred to is the whole of article 21 dealing with milk control. The license referred to is the license granted by the Commissioner pursuant to section 258 and the following sections. As a matter of historical fact, the word " license " could not have referred to the additional determination by the Commissioner under the third sentence of section 258-j, with which we are here concerned, because no sentence of that kind was in the law at the time when former section 317, the immediate predecessor to section 258-j, including the opening sentence, was originally enacted by chapter 158 of the Laws of 1933 and when section 258-j in its original form was enacted by chapter 126 of the Laws of 1934. The third sentence, in its old form, was inserted in the section by chapter 403 of the Laws of 1935.

We therefore conclude that the petitioner is entitled to a health permit for the sale and distribution of milk in the City of Lockport, subject only to compliance with reasonable health requirements. However, in order to clear up the procedural difficulties mentioned at the beginning of this opinion, the petitioner should

make a new demand upon the Health Officer for a health permit in the light of the terms of the new statute. (Cf. 22 Carmody-Wait, New York Practice, § 360, p. 439.) The Health Officer may refuse to issue such a permit only on grounds relating to matters of health. If he refuses to issue the permit, the petitioner may serve an amended and supplemental petition setting forth the new facts (cf. Civ. Prac. Act, § 245-b). In that event, the Health Officer should, of course, have an opportunity to interpose an answer setting up the grounds, relating to matters of health, which he claims justify his refusal.

The order appealed from should therefore be modified by striking out all the ordering provisions except the provision that "the petition shall be deemed dismissed", and by inserting the following provisions: that the dismissal is based solely upon the ground that the petition fails to allege that the petitioner had applied to the Health Officer for a health permit subsequent to the taking effect of the 1962 amendment to section 258-j of the Agriculture and Markets Law, with leave to the petitioner to make such an application within 20 days after the entry of this order and, in the event of a refusal by the Health Officer to issue such permit, with leave to the petitioner to serve an amended and supplemental petition alleging the new facts within 10 days after such refusal, and with leave to the Health Officer to serve his answer to the amended and supplemental petition within 10 days thereafter. As so modified, the order should be affirmed.

WILLIAMS, P. J., BASTOW, GOLDMAN and HENRY, JJ., concur.

Order unanimously modified in accordance with the opinion and as modified affirmed, without costs of this appeal to any party.